IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOEY ALLEN SHADDUCK and<br>JAMES GRUENEWALD,<br><br>    Plaintiffs,<br><br>  vs.<br><br>UNITED PARCEL SERVICE, INC.,<br><br>    Defendant. | Case No. 10 C 2203 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Joey Allen Shadduck and James Gruenewald have sued United Parcel Service, Inc. (UPS) under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 215(a)(3). They allege that UPS retaliated against them when it terminated them after they had made complaints regarding pay and scheduling. UPS has moved for summary judgment on plaintiffs' claims. For the reasons stated below, the Court grants the motion.

### Background

The Court takes the following facts from the parties' memoranda of law, as well as the statements of uncontested facts and supplemental exhibits they have submitted in support. On a motion for summary judgment, the Court draws "all reasonable inferences from undisputed facts in favor of the nonmoving party and [views] the disputed evidence in the light most favorable to the nonmoving party." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

Plaintiffs worked at UPS primarily as sleeper-team drivers. One member of a

sleeper team drives a truck while the other rests in the sleeping compartment, allowing the team to cover great distances efficiently. Plaintiffs frequently worked as "on call" drivers, meaning UPS would call them when there was a load available, and they would come in to work if they were able. Plaintiffs lived in Wisconsin throughout their employment, but after UPS closed its facility in Oak Creek, Wisconsin, they worked primarily out of the CACH (Chicago Area Consolidation Hub) facility in Hodgkins, Illinois. Upon moving to the CACH facility, plaintiffs became members of Teamsters Local 710. The union's collective bargaining agreement with UPS governed the terms and conditions of plaintiffs' employment throughout the relevant time period. UPS also has an internal set of "Team Driver Work Rules" that establishes additional compensation terms.

During their time at the CACH facility, the plaintiffs filed a number of grievances. Several complaints alleged that UPS had not paid them sufficiently for a given activity, such as "start work" or "finish work," for which the collective bargaining agreement entitled employees to a higher-than-usual hourly rate. The plaintiffs also asserted that, given their on-call status, UPS had improperly denied them the opportunity to work by giving them insufficient notice to travel from their Wisconsin homes to the CACH facility. Some of these claims resulted in additional pay. Plaintiffs claim that they experienced hostility from UPS supervisors and administrative staff after filing their grievances and that they were targeted for investigation based on their filings.

On August 21, 2009, the plaintiffs met with their supervisor, Tony Menolascino. Menolascino told them that he was terminating them for dishonesty. He informed them that during a layover, while waiting for a shipment to be ready, they had left a UPS

facility to go to a McDonald's and had improperly failed to record this time as a break. Plaintiffs claim that they believed they had acted appropriately under company policy. UPS contends that the plaintiffs had repeatedly engaged in this behavior and that Menolascino's decision to meet with them was part of his investigation of a pattern of dishonesty. During the meeting, Menolascino stated that he knew the plaintiffs meticulously inspected their pay records and were knowledgeable about the rules governing paid and unpaid activities, and thus he did not think that they truly believed they deserved to be paid for break time.

Each plaintiff filed a grievance regarding his termination. At a meeting shortly thereafter, plaintiffs agreed to sign written acknowledgments of voluntary resignation rather than continue with the grievance process. They claim that UPS promised them several weeks of paid vacation in exchange for this and that neither of them understood the full implications of their acknowledgments. Plaintiffs filed this lawsuit on April 9, 2010, alleging that their termination was unlawful retaliation for prior complaints and grievances that were protected under the FLSA.

## Discussion

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, a court may grant summary judgment "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The FLSA "establishes a federal minimum wage and also . . . requires employers

to pay their employees 150 percent of their hourly wage for hours worked above 40 a week." *Verkuilen v. MediaBank, LLC*, 646 F.3d 979, 980 (7th Cir. 2011).  It also protects workers from retaliation in the form of discharge or discrimination "because such employee has filed any complaint or instituted . . . any proceeding under or related to this chapter."  29 U.S.C. § 215(a)(3).  A *prima facie* case of retaliation under the FLSA requires the plaintiffs to "show that [they] engaged in protected expression, that [they] suffered an adverse employment action, and that a causal link existed between the protected expression and the adverse action."  *Scott v. Sunrise Healthcare Corp.*, 195 F.3d 938, 940 (7th Cir. 1999).  UPS argues that plaintiffs cannot make out a *prima facie* case because they did not believe they were asserting claims under the FLSA.  Instead, UPS argues, plaintiffs' grievances only concerned rights established by the collective bargaining act and thus did not qualify as protected expression under the FLSA.  Plaintiffs respond that the FLSA offers broad and flexible protections covering both the substance and form of their grievances and that requiring specific knowledge of the statute's terms is unduly onerous.  They maintain that their grievance filings constituted protected FLSA complaints.

       The Court agrees that Congress intended the FLSA to offer broad protections and that an employee is not required to assert statutory specifics when making a complaint – or, indeed, to be correct that the employer actually violated the law – in order to be shielded from subsequent retaliation.  "'[T]he remedial nature of the statute . . . warrants an expansive interpretation of its provisions . . . .'"  *Sapperstein v. Hager*, 188 F.3d 852, 857 (7th Cir. 1999) (quoting *Herman v. RSR Sec. Servs., Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)).  The Supreme Court recently settled a significant circuit split

4

when it ruled that an oral complaint to an employer, not just a written complaint or formal filing with a government agency, can satisfy the FLSA standard for protected activity. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325 (2011). Though the Court noted that FLSA requires that an employer receive fair notice of a complaint's substance, its ruling did not specify that the complaint must make specific references to illegality or even to the particular statute involved. Rather, the Court required only that "a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Id*. at 1335.

UPS contends that an employee must show that he subjectively believed that the employer violated the FLSA or, perhaps, that the employee referenced the FLSA or wage-and-hour laws in his complaint. The Court doubts this is so. It is true that the Seventh Circuit noted in *Sapperstein* that "[t]here is no requirement that [minimum wage or maximum hour] laws must actually be violated. It is sufficient that the plaintiff had a good-faith belief that they might be violated." *Sapperstein*, 188 F.3d at 857. But that means only that a subjective belief that the employer violated the FLSA is sufficient, not that it is necessary. In light of the FLSA's purpose of protecting all workers, even those who are unsophisticated, it makes far more sense to assess whether the employee complained of conduct that was understood or reasonably could be understood as violating the FLSA rather than whether the employee cited the correct law. *See, e.g.*, *Lambert v. Ackerley*, 180 F.3d 997, 1008 (9th Cir. 1999) ("[S]o long as an employee communicates the *substance* of his allegations to the employer (e.g., that the employer has failed to pay adequate overtime, or has failed to pay the minimum wage), he is

5

protected by § 215(a)(3).") (emphasis in original); *EEOC v. White & Son Enters.*, 881 F.2d 1006, 1011 (11th Cir. 1989) ("[U]nofficial complaints expressed by the women to their employer about unequal pay constitute an assertion of rights protected under the statute."); *McMillin v. Foodbrands Supply Chain Servs., Inc.*, 272 F. Supp. 2d 1211, 1219 (D. Kan. 2003); *Cuevas v. Monroe St. City Club, Inc.*, 752 F. Supp. 1405, 1413 (N.D. Ill. 1990) ("[T]he fact that [plaintiff] was asserting (however unclearly) his right to get paid for hours worked is enough to constitute protected activity.").

An employee is not, however, entitled to FLSA protection just because he has made a complaint about wages or hours. Though the employee's complaint need not make an express reference to the FLSA, it must be sufficiently clear to alert a reasonable employer that the substance of the complaint concerns "an assertion of rights protected by the statute," *Kasten*, 131 S. Ct. at 1335, namely conduct by the employer relating to violations of the federal minimum wage or maximum hour laws. *Sapperstein*, 188 F.3d at 857.

Plaintiffs' complaints did not meet these requirements. They admit that "none of [their] grievances allege any violation of the FLSA's minimum wage requirements." Pl.'s LR 56.1 Stmt. ¶ 61. They also note that they "do **not** seek FLSA protection for any 'overtime' claims, *per se* . . . ." Pl.'s Resp. at 10 n.7 (emphasis in original).[1] They argue that their claims involved

---

[1] The Court also notes that plaintiffs do not dispute defendants' argument that, as employees of a motor carrier who transport property in interstate commerce, they were subject to regulations by the Department of Transportation and were therefore exempt from the FLSA's overtime-pay provisions. *See Collins v. Heritage Wine Cellars, Ltd.*, 589 F.3d 895, 897 (7th Cir. 2009).

6

> "donning and doffing" type violations where Plaintiffs sought – and often received – additional payment from UPS for their actual arrival time at a location, and not their *scheduled* arrival time; payment for various "start time"/pre-trip activities; payment for "finish time"/post trip activities, payment for actual driving time, and Shadduck's oral complaint to [his supervisor] about not being compensated for attending a required safety meeting at UPS.

*Id*. at 9-10. Plaintiffs' twenty-four written grievances did not allege that they were not paid for an activity. Instead, they concerned instances in which plaintiffs were not paid, for example, time-and-one-half for "start work" as required under their union contract. Because plaintiffs were paid for this work time, and in light of their admissions that their grievances did not concern either minimum wage or overtime laws, the Court concludes that none of the written claims concerned subjects covered by FLSA, and therefore that they were insufficient to put UPS (or any reasonable employer) on notice that they were asserting rights protected under the FLSA.

The only instance in which plaintiffs claimed not to have been paid at all involved Shadduck's disagreement with his supervisor regarding a safety meeting. The exact circumstances of this meeting are not completely clear from the record, but Shadduck testified during his deposition that upon returning from a team run, he and Gruenewald saw "a note that all drivers must attend a . . . meeting in the shop." Shadduck Dep. 122:9-10. After turning off the GPS device that monitors their mileage and location, he and Gruenewald attended the meeting, which primarily concerned strategies for managing high blood pressure. Afterwards, Shadduck recorded on his time sheet twenty minutes for attendance at the meeting. Although this was less time than he believed he had spent at the meeting, he "didn't charge for that full time, because we thought that that was too much time to – you know, because I had an interest in it, and

7

we stayed a little longer." *Id.* at 124:17-20. Shadduck says that one of his supervisors later called and angrily said that he would not pay Shadduck for time spent in the meeting, because the meeting was not intended for team drivers.

Shadduck's description is the only information either party presents regarding the circumstances of the meeting. It does not provide sufficient evidence for a reasonable jury to conclude that the grievance put UPS on notice that Shadduck was complaining about conduct that could have amounted to a violation of the FLSA. It is significant in this regard that, as noted earlier, plaintiffs have expressly admitted that none of their complaints concerned minimum wage or overtime violations.

In sum, the Court concludes that no reasonable jury could find that any of plaintiffs' written or oral grievances amounted to protected activity under the FLSA. Accordingly, plaintiffs' retaliation claim fails as a matter of law.

## Conclusion

For the foregoing reasons, the Court grants UPS's motion for summary judgment [docket no. 29] and directs the Clerk to enter judgment in favor of the defendant.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 26, 2011